# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
### WESTERN DIVISION

CHINEDUM NDUKWE, et al,
      Plaintiffs,

vs.

JAMES L. WALKER, JR., et al.,
      Defendants.

Case No. 1:20-cv-790

McFarland, J.
Litkovitz, M.J.

**REPORT AND
RECOMMENDATION**

## I. Introduction

Plaintiffs Chinedum Ndukwe, an Ohio resident, and Kingsley Consulting, LLC, a company doing business in Ohio, originally filed this action in the Hamilton County, Ohio Court of Common Pleas on September 19, 2019.[1]  (Doc. 2).  Plaintiffs filed a "First Amended Complaint for Extortion, Coercion, Civil Conspiracy, Defamation/Libel and False Light Invasion of Privacy" in the Common Pleas Court on September 22, 2020.  (Doc. 11).  They named as defendants James L. Walker, Jr., an attorney licensed in the State of Georgia; J. Walker & Associates, L.L.C. (Walker & Assocs.), alleged upon information and belief to be a business in the State of Georgia; Theodore P. Cummings, an attorney residing in Ohio at all relevant times who, upon information and belief, is currently licensed in the State of Ohio; Cummings Law LLP, formerly an Ohio law firm which the Ohio Secretary of State cancelled as an Ohio Limited Liability Partnership effective on or about August 12, 2019; and Jane Doe and John Doe, who upon information and belief were residents of Ohio at all relevant times.  (Doc. 11, ¶¶ 3-10).

---

[1] On September 20, 2019, the Doe defendants in this case (Jane Doe and John Doe), through their attorneys Cummings, Walker, and Walker and Assocs., filed a civil lawsuit in the Hamilton County, Ohio Court of Common Pleas against the plaintiffs in this federal lawsuit, Ndukwe and Kingsley.  (*Id*., ¶ 78; *see Jane Doe and John Doe v. Chinedum Ndukwe and Kingsley Consulting, LLC,* Case No. A1904449).

The following motions are pending in this case:

- Plaintiffs' motion for protective order (Doc. 3), defendants' response (Doc. 8), and plaintiffs' reply (Doc. 15)
- Plaintiffs' motion to amend/correct complaint (Doc. 4), defendants' response in opposition (Doc. 7), and plaintiffs' reply in support of the motion (Doc. 14)
- Plaintiffs' motion to consolidate this case, then pending in the Hamilton County Court of Common Pleas, with a second case pending in the Court of Common Pleas (Doc. 5), defendants' motion to defer a ruling on the motion to consolidate (Doc. 10), and plaintiffs' reply memorandum in support of motion to consolidate (Doc. 13)
- Walker and Walker & Assocs. (the Walker defendants') renewed motion to dismiss the complaint (Doc. 6), and plaintiffs' response in opposition (Doc. 12)
- Defendants' motion for a protective order (Doc. 9)
- The Walker defendants' motion to dismiss the amended complaint for lack of jurisdiction (Doc. 18), plaintiffs' motion for an extension of time to respond (Doc. 26), the Walker defendants' response in opposition (Doc. 31), and plaintiffs' reply (Doc. 32)
- Plaintiffs' motion to remand to state court (Doc. 23), plaintiffs' motion to expedite consideration of the motion (Doc. 25), and defendants' motion to strike the motion to remand (Doc. 27)
- Plaintiffs' motion to remand and for attorney fees and costs (Doc. 30), defendants' response in opposition (Doc. 40), and plaintiffs' reply (Doc. 41)

## II. Procedural background

This is the second notice of removal defendants have filed in the state court case.[2] After the prior removal and remand, plaintiffs filed their first amended complaint in state court pursuant to Ohio Civ. R. 15(A). (Doc. 11; *see* Doc. 12 at PAGEID 1139). Defendants again removed the matter to this federal court and filed their responses to the amended complaint: the Walker defendants filed a motion to dismiss the amended complaint for lack of jurisdiction (Doc. 18); defendants Cummings and Cummings Law filed an answer to the amended complaint (Doc. 19); and the Doe defendants filed an answer (Doc. 20).

---

[2] Defendant Walker removed the case based on federal diversity jurisdiction under 28 U.S.C. § 1332 on October 21, 2019. *See Ndukwe v. Walker,* No. 1:19-cv-0888 (S.D. Ohio) (Doc. 1). The case was remanded to state court for lack of subject matter jurisdiction on June 12, 2020. *Id.* (Doc. 17).

### A.  The amended complaint

Plaintiffs make the following allegations in the amended complaint:  Upon information and belief, the Doe defendants hired and authorized Attorneys Walker and Cummings to act as their "attorneys, co-counsel and agents."  (Doc. 11, ¶ 11).  In September 2019, the attorneys sent a letter on behalf of the Doe defendants to "plaintiffs" (9/3/19 letter).  (*Id*., ¶ 12).  The letter made false and baseless allegations and threats against plaintiffs about conduct that allegedly occurred in Cincinnati, Ohio and made a demand for $10 million.  (*Id*.).  The Doe defendants have also made false allegations and threats against plaintiff Ndukwe regarding conduct that allegedly occurred in Cincinnati, Ohio.   (*Id*., ¶ 13).

Ndukwe immediately retained attorney R. Scott Croswell to represent him and his company.  (*Id*., ¶ 24).  Although the 9/3/19 letter asked plaintiff Ndukwe to have his counsel contact defendant Walker or defendant Cummings, Walker called plaintiff five days after sending the 9/3/19 letter and asked plaintiff how he intended to respond.  (*Id*., ¶¶ 25-26).  Attorney Walker said, "[I]t was very simple, that his client could have one or two stories."  (*Id*., ¶ 26).  Walker also told plaintiff that, "[H]e'd done this a number of times before on Plaintiff Ndukwe's side of the table," and "Walker advised his players to always pay."  (*Id*.).  Walker's words "caused great alarm" to Ndukwe.  (*Id*.).

 The next day, September 9, 2019, Croswell emailed defendant Cummings and informed Cummings that he had been retained to represent Ndukwe, who had forwarded the 9/3/19 letter to Croswell, and Croswell was available to discuss the matter at counsel's convenience.  (*Id*., ¶ 27).  The morning of September 10, 2019, Croswell sent a letter of representation to Cummings by email and ordinary U.S. mail, which confirmed his email from the prior day.  (*Id*., ¶ 28).  Despite Croswell's notice to Cummings that he represented Ndukwe, defendant Walker texted

Ndukwe's cell phone on or about September 11, 2019, and Walker informed him that "our legal team is filing suit tomorrow Sir, unless we hear for [sic] your attorneys!"  (*Id*., ¶ 29).

On September 13, 2019, defendant Walker emailed Croswell and attached a draft of a civil complaint against Ndukwe on behalf of the Doe defendants.  (*Id*., ¶ 30).  The draft complaint alleged inappropriate conduct by Ndukwe and demanded $10 million as damages. (*Id*.).  In the email, Walker "made threats and/or threats by innuendo that they had already had contact with local police authorities in Ohio and would be speaking with the NFL [National Football League[3]]."  (*Id*.).  That same day, Walker & Assocs. arranged a phone call with attorneys Walker, Cummings, and Croswell.  (*Id*., ¶¶ 31-34).  Walker and Cummings represented that they had been engaged by the Doe defendants and were authorized to act on behalf of the Doe defendants.  (*Id*., ¶¶ 56-58).  During the phone call, attorneys Walker and Cummings attempted to coerce or extort plaintiffs to pay $10 million or a substantial seven-figure sum to the Doe defendants.  (*Id*., ¶ 58).  Walker and Cummings spoke to Croswell in an "aggressive and demanding tone" and told him, "[W]e've lined up all the ducks."  (*Id*., ¶¶ 35, 37).  They threatened that if plaintiffs did not pay $10 million or a "substantial" seven-figure amount, defendants would: "(1) pursue criminal charges; (2) notify the NFL of the allegations; (3) prepare and/or make statements to the media and/or pursue the 'media piece'; (4) 'one by one [] notify anybody he's doing business with'; (5) pursue shutting down all of Plaintiffs' business projects . . .; (6) threatened Plaintiffs were certain to lose 10 to 20 million dollars 'if this gets out'; and ([7]) file the Draft Complaint."  (*Id*., ¶ 36).

Walker also told Croswell that defendants Jane Doe and Cummings were "potentially scheduled to meet with the police during the following week of September 16, 2019"; however,

---

[3] The reference to the NFL is not explained in the amended complaint.

Walker and Cummings indicated that they and their client retained some control over whether the police would proceed against plaintiffs, and the police "would not be a problem" if plaintiffs paid the $10 million or the substantial seven-figure sum defendants were demanding.  (*Id.*, ¶¶ 38-47).  They said or implied that defendant Jane Doe was prepared to tell the police one of two different stories depending on whether plaintiffs paid: if plaintiffs did not pay, she would say that Ndukwe had committed a crime; if plaintiffs did pay, she would claim that nothing inappropriate happened, Ndukwe had apologized, and she did not want to pursue a criminal action.  (*Id.*, ¶¶ 44-45).  Walker and Cummings described plaintiffs' assets in detail during the call, all of which they claimed plaintiffs stood to lose if plaintiffs did not pay the sum they demanded.  (*Id.*, ¶ 48).  Walker claimed that plaintiffs would lose $10 to $20 million if the matter became public, and he threatened to generate publicity.  (*Id.*, ¶¶ 49-55).

Defendant Jane Doe made multiple false and untrue statements of fact which she knew would be published during an interview with WLWT Channel 5, including false allegations that Ndukwe committed sexual assault and battery when she was a summer intern at Kingsley.  (*Id.*, ¶ 59).  The false statements were defamatory and injurious to plaintiffs' reputation, and they were published and re-published to third parties by other media outlets.  (*Id.*, ¶ 60).  Walker and Cummings and their agents made similar false allegations to the media and other third-party individuals about plaintiffs.  (*Id.*, ¶¶ 61-64).  They also falsely alleged that Ndukwe gave Jane Doe $1,000.00 in cash to attempt to buy her silence.  (*Id.*, ¶ 61).  Defendants' conduct was reckless or was committed with actual malice or the intent to injure plaintiffs, and defendants knew their false statements would be published and re-published by media outlets.  (*Id.*, ¶¶ 65, 66).

After plaintiffs refused to pay the sum defendants demanded, defendant Jane Doe pursued criminal allegations against Ndukwe.  (*Id*., ¶ 68).  Upon information and belief, she made numerous inconsistent and contradictory allegations to the police.  (*Id*., ¶ 69).  In addition, independent fact witnesses contradicted her allegations.  (*Id*., ¶ 70).  Ndukwe cooperated with the criminal investigation.  (*Id*., ¶ 72).  The Hamilton County Prosecutor's Office released a statement on October 17, 2019, stating it had determined after a full investigation that it would bring no charges against Ndukwe, but it was forwarding a complaint to the Supreme Courts of Ohio and Georgia concerning Walker and Cummings' conduct.  (*Id*., ¶¶ 75-76).

Based on these allegations, plaintiffs bring five claims for relief in the amended complaint.  Count One is a claim to impose civil liability under Ohio Rev. Code § 2307.60(A)(1)[4] against defendants for acts of criminal extortion under Ohio Rev. Code § 2905.11(A)(1), (4), and (5).[5]  (Doc. 11, ¶¶ 83-95).  Plaintiffs claim that defendants "uttered or threatened calumny" against them by their threats to publish false and defamatory statements about plaintiffs to the police, the NFL, the media, and plaintiffs' business interests and by their threats to file a criminal complaint against plaintiffs in order to damage their reputations.  (*Id*., ¶¶ 84, 85).  Plaintiffs allege that defendants' threats to file criminal proceedings were made with the intent to obtain $10 million or a substantial seven-figure payment.  (*Id*., ¶ 86).  Plaintiffs claim that these threats to file criminal proceedings if a payment was not made are "criminal and civil extortion as a matter of law."  (*Id*., ¶ 87).  Plaintiffs further allege that defendants "also

[4] Ohio Rev. Code § 2307.60(A)(1) provides: "Anyone injured in person or property by a criminal act has, and may recover full damages in, a civil action unless specifically excepted by law. . . ."

[5] Ohio Rev. Code § 2905.11(A) provides, in part, that a person commits a felony if he does any of the following "with purpose to obtain any valuable thing or valuable benefit or to induce another to do an unlawful act. . . : (1) Threaten to commit any felony; . . . (4) Utter or threaten any calumny against any person; . . . (5) Expose or threaten to expose any matter tending to subject any person to hatred, contempt, or ridicule, or to damage any person's personal or business repute, or to impair any person's credit."

committed the separate tortious acts of defamation/libel against Plaintiffs, false light invasion of privacy against Plaintiff Ndukwe, and civil conspiracy against Plaintiffs." (*Id*., ¶ 88).  Plaintiffs also claim that defendants' direct threats "constitute extortion pursuant to R.C. 2905.11(A)(1), (4), and (5)," and anyone injured by a criminal act may recover damages in a civil action under Ohio Rev. Code § 2307.60(A)(1).[6] (*Id*., ¶¶ 90, 91).  Plaintiffs claim that "[d]efendants' extortion pursuant to R.C. 2905.11(A)(1), (4), and (5) [] proximately caused Plaintiffs' damages." (*Id*., ¶ 95).  Based on these same allegations, plaintiffs allege in Count Two a claim for civil liability under Ohio Rev. Code § 2307.60(A)(1) for acts of coercion under Ohio Rev. Code § 2905.12(A)(1), (2), (3), (4), and (5).[7] (*Id*., Count Two, ¶¶ 96-108).

Count Three is a claim for defamation/libel.  (*Id*., ¶¶ 109-120).  Plaintiffs allege that defendants Jane Doe and attorneys Walker and Cummings made false allegations that Ndukwe committed sexual assault/battery and made a $1,000.00 cash payment to Jane Doe to silence her to media outlets and other third parties; the statements were published and republished; defendants were reckless in publishing the false statements or causing them to be republished, which defendants knew would occur; defendants acted with actual malice in publishing the false and defamatory statements; and "[p]laintiffs" have suffered damages to "his reputation" in an amount that exceeds $25,000.00.  (*Id*).

---

[6] Plaintiffs cite "a leading case of *Flatley v. Mauro*," 139 P.3d 2 (2006), which they allege "considered a demand letter and phone conversation strikingly similar" to those alleged in the complaint and held that "the letter and subsequent phone calls constitute criminal extortion as a matter of law."  (Doc. 11, ¶ 94).

[7] Ohio Rev. Code § 2905.12(A) provides, in part, that a person commits a felony if he does any of the following "with purpose to coerce another into taking or refraining from action concerning which the other person has a legal freedom of choice. . . :
(1) Threaten to commit any offense;
(2) Utter or threaten any calumny against any person;
(3) Expose or threaten to expose any matter tending to subject any person to hatred, contempt, or ridicule, to damage any person's personal or business repute, or to impair any person's credit.
(4) Institute or threaten criminal proceedings against any person;
(5) Take, withhold, or threaten to take or withhold official action, or cause or threaten to cause official action to be taken or withheld.

Based on these same allegations, plaintiff Ndukwe alleges in Count Four that defendants are liable to him for false light invasion of privacy.  (*Id*., ¶¶ 121-131).  Plaintiff Ndukwe claims that defendants knew their statements or their agents' statements were false and they acted in reckless disregard as to the falsity of those statements.  (*Id*., ¶ 129).  Plaintiff Ndukwe claims that defendants' conduct publicized a matter concerning him "that placed him before the public in a false light" which was "highly offensive and falsely accused [him] of sexual assault and battery, among other alleged crimes and misconduct."  (*Id*., ¶¶ 127, 128).

Finally, Count Five alleges a claim for civil conspiracy.  (*Id*., Count Five, ¶¶ 132-137).  Plaintiffs claim that defendants "entered into a malicious combination of two or more persons" with the intention to commit the "underlying tortious acts of extortion, coercion and defamation/libel" against plaintiffs and false light invasion of privacy against Ndukwe.  (*Id*., ¶¶ 133-134).

As relief, plaintiffs seek to recover punitive damages (*Id*., Count Six, ¶¶ 138-140); compensatory damages, attorneys fees, and costs; and such other relief as the Court deems just and equitable.  (*Id*. at PAGEID 1133).

**B.  Notice of removal**

On October 2, 2020, defendant Cummings Law, LLP, removed this action from the Hamilton County Court of Common Pleas to this federal Court under the authority of 28 U.S.C. §§ 1331, 1441, and 1446.  (Doc. 1).  Defendant asserts the action is removable under 28 U.S.C. § 1331 because it involves a substantial federal question.  (*Id*. at PAGEID 3).  Defendant contends that plaintiffs "artfully drafted their amended complaint so as to avoid explicitly citing to a federal statute as the basis for their civil conspiracy claim (Count Five), [but] it is clear that this claim necessarily raises a disputed federal question."  (*Id*.).  Defendant argues that to succeed on

the claim, plaintiffs must establish that defendants "violated a federal law."  (Doc. 1 at PAGEID 4-5).

## III.  Motion to remand

Plaintiffs move to remand this matter to the Hamilton County Court of Common Pleas under 28 U.S.C. § 1447(c) on the ground there is no federal question jurisdiction.  (Doc. 30).[8] Plaintiffs contend removal is objectively unreasonable and defendant removed the case in bad faith for the improper purposes of circumventing the jurisdiction of the Common Pleas Court; avoiding consolidation of lawsuits; halting a state court hearing scheduled for November 17, 2020 and discovery on matters related to personal jurisdiction; and vexatiously multiplying the proceedings and causing needless expense to plaintiffs.  Plaintiffs incorporate by reference their motion for expedited consideration of their motion to remand (Doc. 25) and their motion for an extension of time to respond to the Walker defendants' motion to dismiss for lack of personal jurisdiction (Doc. 26).

### A.  Governing law

Removal is governed by 28 U.S.C. § 1441, which provides in relevant part:  "[A]ny civil action brought in a State court of which the district courts of the United States have original jurisdiction, may be removed by the defendant or the defendants, to the district court of the United States for the district and division embracing the place where such action is pending."  28 U.S.C. § 1441(a).  "Only state-court actions that originally could have been filed in federal court may be removed to federal court by the defendant."  *Caterpillar Inc. v. Williams*, 482 U.S. 386, 392 (1987); *W.D. Williams, IV v. Walmart's, Pres.,* No. 1:18-cv-518, 2018 WL 8415547, at *1 (S.D. Ohio Sept. 21, 2018), *report and recommendation adopted sub nom. W.D. Williams, IV v.*

---

[8] Plaintiffs also seek attorney fees and costs related to the October 2, 2020 Notice of Removal.

*WalMart's,* 2019 WL 1048929 (S.D. Ohio Mar. 5, 2019).  The issue to be resolved on a motion to remand is whether the district court lacks subject matter jurisdiction or, stated otherwise, whether the case was improperly removed from the state court.  *Weil v. Process Equipment Co. of Tipp City*, 879 F. Supp. 2d 745, 748 (S.D. Ohio 2012) (citing 28 U.S.C. § 1447(c); *Provident Bank v. Beck*, 952 F. Supp. 539, 540 (S.D. Ohio 1996)).  The removing party has the burden to show that removal is proper and that the district court has original jurisdiction to hear the case. *Williams*, 2018 WL 8415547, at *1 (citing *Village of Oakwood v. State Bank and Trust Co.*, 539 F.3d 373, 377 (6th Cir. 2008); *Ahearn v. Charter Township of Bloomfield*, 100 F.3d 451, 453-54 (6th Cir. 1996)).  The removal statute must be strictly construed and if jurisdiction is in doubt, remand to the state court is warranted.  *Id*. (citing *Brierly v. Alusuisse Flexible Packaging, Inc.*, 184 F.3d 527, 534 (6th Cir. 1999)).  *See also Perna v. Health One Credit Union,* 983 F.3d 258, 273 (6th Cir. 2020) (quoting 28 U.S.C. § 1447(c) ("When a district court finds that it lacks jurisdiction over a case that has been removed from a state court, . . . 'the case shall be remanded' to the state court.")).

Defendants' notice of removal in this case relies on the federal-question jurisdiction statute, 28 U.S.C. § 1331.  Section 1331 gives district courts original jurisdiction of all civil actions "arising under" federal law.  For purposes of federal question jurisdiction, a claim arises under federal law "when the cause of action is (1) created by a federal statute or (2) presents a substantial question of federal law."  *Miller v. Bruenger,* 949 F.3d 986, 991 (6th Cir. 2020) (citing *Estate of Cornell v. Bayview Loan Servicing, LLC,* 908 F.3d 1008, 1012-14 (6th Cir. 2018)).  *See also H.R. ex rel. Reuter v. Medtronic, Inc.*, 996 F. Supp. 2d 671, 676 (S.D. Ohio 2014) (citing *Eastman v. Marine Mech. Corp.,* 438 F.3d 544, 550 (6th Cir. 2006)) (The federal

court has original jurisdiction if (1) "federal law creates the cause of action," or (2) the "right to relief involves the resolution or interpretation of a substantial question of federal law.")

"Whether a cause of action arises under federal law must be apparent from the face of the 'well-pleaded complaint.'" *Miller*, 949 F.3d at 990 (quoting *Metro. Life Ins. Co. v. Taylor*, 481 U.S. 58, 63 (1987)). The Court must examine the face of the "plaintiff's complaint, as it is stated at the time of removal, and the defendant's notice of removal." *Gentek Bldg. Products, Inc. v. Sherwin-Williams Co.*, 491 F.3d 320, 330 (6th Cir. 2007). The plaintiff is the master of his claim and may avoid federal jurisdiction by exclusive reliance on state law. *See Caterpillar*, 482 U.S. at 392. If the plaintiff's complaint relies only on state law claims, ordinarily the case may not be removed. *Gentek Bldg. Products, Inc.*, 491 F.3d at 325. Further, "a case may *not* be removed to federal court on the basis of a federal defense . . . even if the defense is anticipated in the plaintiff's complaint, and even if both parties concede that the federal defense is the only question truly at issue." *Caterpillar*, 482 U.S. at 393 (citing *Franchise Tax Bd. v. Constr. Laborers Vacation Tr.*, 463 U.S. 1, 12 (1983)). *See also Beneficial National Bank v. Anderson*, 539 U.S. 1, 6 (2003).

There are exceptions to the "well-pleaded complaint" rule that may apply and confer federal question jurisdiction when a federal cause of action is not apparent on the face of the complaint. *Mikulski v. Centerior Energy Corp.,* 501 F.3d 555, 561 (6th Cir. 2007). One exception is the "artful pleading" doctrine, which holds that federal question jurisdiction exists "when a plaintiff shrouds its complaint with state law claims in order to avoid federal jurisdiction when its claim[s] are truly federal cause of actions." *Jenkins v. Medtronic, Inc.*, 984 F. Supp. 2d 873, 877 (W.D. Tenn. 2013) (citing *Her Majesty the Queen in Right of the Province of Ontario v. City of Detroit,* 874 F.2d 332, 339 (6th Cir. 1989)). *See also Mikulski*, 501 F.3d at 561 (citing

*Franchise Tax Bd.*, 463 U.S. at 22) (the artful pleading doctrine applies where the "plaintiff has carefully drafted the complaint so as to avoid naming a federal statute as the basis for the claim, and the claim is in fact based on a federal statute"). Most courts properly limit the practice of seeking "to determine whether the real nature of the claims is federal, regardless of plaintiff's characterization . . . to areas of the law pre-empted by federal substantive law." *Jenkins,* 984 F. Supp. 2d at 877 (quoting *Mikulski*, 501 F.3d at 561).

A second exception, the complete-preemption doctrine, applies when "Congress may intend the preemptive force of a federal statute to be so extraordinary that 'any claim purportedly based on that pre-empted state law is considered, from its inception, a federal claim, and therefore arises under federal law.'" *Mikulski,* 501 F.3d at 563 (quoting *Caterpillar,* 482 U.S. at 393). Complete preemption has been found in only a very few types of cases. *Id*. at 563-64 (citations omitted).

The Sixth Circuit in *Mikulski* identified a third exception to the well-pleaded complaint rule, the "substantial-federal-question doctrine, which applies 'where the vindication of a right under state law necessarily turn[s] on some construction of federal law.'" *Id*. at 560 (quoting *Franchise Tax Bd.,* 463 U.S. at 9). A three-part test applies to determine whether a federal issue that is "embedded in state law claims" presents a "substantial question of federal law" over which the federal court should exercise jurisdiction: Does the state law cause of action (1) "necessarily raise a stated federal issue," (2) that is "actually disputed and substantial," and (3) that the "federal forum may entertain without disturbing any congressionally approved balance of federal and state judicial responsibilities." *Grable & Sons Metal Products, Inc. v. Darue Eng'g & Mfg.,* 545 U.S. 308, 314 (2005). Additional factors to be considered in assessing whether a question of federal law is "substantial" are: "[(1)] whether a federal agency is a party

to the action, [(2)] whether the federal issue is important and dispositive, and [(3)] how broad the binding effect of the decision will be." *Miller*, 949 F.3d at 993 (citing *Mikulski,* 501 F.3d at 570). The court considers these factors, together with any other relevant factors, "in aggregate." *Id.* (quoting *Mikulski*, 501 F.3d at 570).

### B.  This matter should be remanded to state court

Defendants contend that jurisdiction is proper in this Court because the amended complaint "involves a substantial federal question." (Doc. 1 at PAGEID 3, citing *Nayyar v. Mt. Carmel Health Sys.*, No. 2:12cv189, 2012 WL 3929830, at *2 (S.D. Ohio Sept. 10, 2012) (citing *Mikulski*, 501 F.3d at 568) (applying the three-part *Grable* test for determining "whether a state-law claim which contains an embedded federal claim is within the jurisdiction of the federal courts."). Defendants argue that plaintiffs have "artfully drafted their amended complaint" to avoid citing federal law as the basis for their civil conspiracy claim brought under state law (Count Five), when in actuality the Court must "decide as a threshold question" whether defendants violated federal extortion law in order to resolve the claim.[9]  Defendants argue that plaintiffs' civil conspiracy claim is necessarily premised on federal extortion law as shown not only by the factual allegations of the amended complaint but also by: (1) "the interplay between Ohio Rev. Code § 2307.60(A)(1) [which imposes civil liability for criminal acts] and Ohio and federal criminal laws governing extortion"; (2) plaintiffs' references in the state court litigation to "the federal criminal complaint against embattled attorney Michael Avenatti," which involved charges under federal criminal statutes 18 U.S.C. §§ 875 and 1951[10]; (3) plaintiffs' reference in

---

[9] Although defendants frame their argument in terms of the "artful pleading" exception to the well-pleaded complaint rule, the gist of their argument is that a disputed and substantial federal question is embedded in plaintiffs' civil conspiracy cause of action.
.

[10] Defendants argue that in the course of litigation between the parties in Ohio state court, and in state court documents that were refiled in this case, plaintiffs have analogized conduct for which Avenatti has been federally prosecuted under 18 U.S.C. § 875 (extortion through interstate communications) and 18 U.S.C. § 1951 (interference

the amended complaint to the California case of *Flatley*, 139 P.3d 2, given the substantial similarities between California and federal extortion law; and (4) plaintiffs' ability to state a claim against the Doe defendants for civil conspiracy based only on underlying violations of federal extortion law, 18 U.S.C. §§ 875 and 1951, and not based on underlying violations of Ohio extortion law.  (Doc. 1 at PAGEID 4-6).  Defendants contend that consideration of these matters shows that plaintiffs' "civil conspiracy claim artfully sets forth a claim under federal law, under the guise of Ohio Rev. Code § 2307.60(A)(1)," and that plaintiffs must establish defendants violated a federal law to succeed on this claim.  (*Id*.).

Plaintiffs move to remand this case to state court on the ground federal question jurisdiction is lacking.  (Doc. 30).  Plaintiffs argue that the amended complaint alleges only Ohio statutory and common law causes of action, i.e., civil liability for criminal acts under Ohio Rev. Code § 2307.60 (extortion under Ohio Rev. Code § 2905.11 and coercion under Ohio Rev. Code § 2905.12); and defamation/libel, false light invasion of privacy, and civil conspiracy under the Ohio common law.  (*Id*. at PAGEID 1769, 1781).  Plaintiffs contend that defendants admit the first amended complaint does not arise under the Constitution or laws of the United States.  (*Id*. at PAGEID 1769).  Plaintiffs argue there is no dispute that the amended complaint, on its face, does not allege violations of federal criminal statutes, including 18 U.S.C. §§ 875 and 1951, and it does not reference Michael Avenatti.  (*Id*. at PAGEID 1769-70).  Plaintiffs further contend that no exceptions to the well-pleaded complaint rule apply.  Plaintiffs assert that the "artful pleading" exception to the well-pleaded complaint rule is not satisfied because their state law claims are not based on any federal statutes.  (*Id*. at PAGEID 1781).  Plaintiffs allege that even

---

with commerce by extortion) to defendants' conduct in allegedly attempting to extort Ndukwe, including by referring to defendants' alleged conduct as "Avenatti-like threats."  (Doc. 1 at PAGEID 5)

assuming their conspiracy to extort claim is based on federal law, which it is not, Congress has not preempted all such claims. (*Id*. at PAGEID 1778). Finally, plaintiffs argue that defendants have not satisfied the three-part test established in *Grable* for determining whether there is jurisdiction over a federal claim embedded in a party's state law claims. (*Id*. at PAGEID 1780-81, citing *Grable*, 545 U.S. 308; *Mikulski*, 501 F.3d at 555).

Defendants argue in response that plaintiffs have "artfully pled" a civil conspiracy claim that actually presents multiple questions of federal law. (Doc. 40 at PAGEID 1832, citing *Mikulski*, 501 F.3d at 560). Though defendants allude to the "artful pleading" exception to the well-pleaded complaint doctrine, the basis of their argument for removal is the substantial federal question doctrine. Defendants argue that removal is warranted under the doctrine because a federal question is embedded in plaintiffs' state law complaint. Defendants specifically argue that in order to prevail on their civil conspiracy claim, plaintiffs must prove a violation of a federal statute, which is "an essential element of the claim." (*Id*. at PAGEID 1839, 1841). Defendants argue that plaintiffs' civil conspiracy claim hinges on a violation of 18 U.S.C. §§ 875 or 1951 because if there is no such violation, there is "no underlying tortious conduct" and plaintiffs' civil conspiracy claim fails. (*Id*. at PAGEID 1841). Defendants allege that as explained in the notice of removal, plaintiffs "could not possibly have a viable claim for civil conspiracy *to commit extortion* under Ohio law on the facts alleged in their amended complaint," which further confirms that plaintiffs' civil conspiracy claim is premised on federal law. (*Id*. at PAGEID 1836, citing Doc. 1 at PAGEID 4-5). Defendants contend that the substantial-federal-question doctrine analysis set forth in *Grable*, 545 U.S. at 314, applies ("the question is, does a state-law claim necessarily raise a stated federal issue, actually disputed and substantial, which a federal forum may entertain without disturbing any congressionally approved balance of federal

and state judicial responsibilities."). (*Id.* at 1839-46). Defendants allege that plaintiffs' claims necessarily raise disputed issues of federal law; the federal interest is substantial; and exercising jurisdiction would not disturb the state-federal jurisdictional balance. (*Id.*; Doc. 1 at PAGEID 3-4, 7). As authority for their position, defendants rely on the decisions in *H.R. ex rel. Reuter*, 996 F. Supp. 2d at 680 (citing *Hartland Lakeside Joint No. 3 Sch. Dist. v. WEA Ins. Corp.*, No. 12-C-154, 2012 WL 1424731, at *5 (E.D. Wis. 2012))[11] and *Jenkins*, 984 F. Supp. 2d at 878, both of which applied the *Grable* factors to determine whether a state law claim necessarily presented a substantial federal question. (Doc. 1 at PAGEID 3-4).

### 1.  Substantial federal question doctrine

The appropriate analysis to apply here is the three-factor test set forth in *Grable* for determining whether a state law complaint necessarily embodies or hinges on an issue of federal law. *See Grable*, 545 U.S. at 308. The Court analyzes defendants' argument that plaintiffs' civil conspiracy claim hinges on an issue of federal law by applying the three-factor *Grable* test and asking whether the state law causes of action (1) "necessarily raise a stated federal issue," (2) that is "actually disputed and substantial," and (3) that the "federal forum may entertain without disturbing any congressionally approved balance of federal and state judicial responsibilities." *Grable,* 545 U.S. at 314.

### a.  Does plaintiffs' civil conspiracy claim necessarily raise a stated federal issue?

Defendants attempt to satisfy the first prong of the *Grable* analysis by demonstrating that plaintiffs' civil conspiracy claim against the Doe defendants hinges on a violation of federal criminal statutes, 18 U.S.C. §§ 875 and 1951. Defendants assert that plaintiffs identify the law

---

[11] The district court's decision in *Hartland Lakeside Joint No. 3 Sch. Dist.*, 2012 WL 1424731, was vacated on appeal. *See* 756 F.3d 1032 (7th Cir. 2014).

16

that underlies their extortion claim in Count One of the amended complaint by claiming that defendants are civilly liable under Ohio Rev. Code § 2307.60 for criminal acts of extortion that violate Ohio Rev. Code § 2905.11(A)(1), (4), and (5) (Ohio's criminal extortion statute). (Doc. 40 at PAGEID 1835; *see also* Doc. 1 at PAGEID 4, citing Doc. 11, ¶¶ 87, 91). Defendants contend that by contrast, in Count Five plaintiffs do not identify the extortion law that underlies their civil conspiracy claim, which alleges that defendants conspired to commit "tortious acts of extortion" and other acts. (Doc. 40 at PAGEID 1835-36; *see also* Doc. 1 at PAGEID 4, citing Doc. 11, Count Five). Defendants argue that plaintiffs have confirmed that they intended to premise the civil conspiracy claim on violations of federal extortion law by describing defendants' threats as "Avenatti-like" threats in the parties' state court litigation and referencing *Flatley*, a California case involving state law that is substantially identical to federal law, in the amended complaint. (Doc. 40 at PAGEID 1834-35). Defendants also argue that plaintiffs' civil conspiracy claim is necessarily premised on underlying violations of federal extortion law because plaintiffs cannot succeed on a claim for civil conspiracy to commit extortion in violation of state law against the Doe defendants based on the facts alleged in the complaint. (*Id.* at PAGEID 1841).

Defendants' latter argument is difficult to follow. Defendants explain their theory as to why plaintiffs do not have a viable claim for civil conspiracy to commit extortion in violation of state law in their Notice of Removal as follows:

> Further confirmation that Plaintiffs' civil conspiracy claim is premised upon federal law comes from the fact that Plaintiffs could not possibly have a viable claim for civil conspiracy to *commit extortion* under Ohio law on the facts alleged in their amended complaint. In order to establish an underlying tortious act that could serve as the basis for liability for civil conspiracy, Plaintiffs would have to demonstrate that Jane Doe and John Doe committed a criminal act, i.e., conspiracy to extort, in order to satisfy Ohio Rev. Code § 2307.60 - otherwise, there would be no criminal act upon which a recovery could lie. But Plaintiffs

allege that only Walker and Cummings committed actual acts of extortion.  As to their extortion claim, Plaintiffs seek to hold the Does jointly liable merely through some form of vicarious liability.  But § 2307.60 only allows for recovery for criminal acts, and Ohio law does not recognize criminal liability for a conspiracy to commit extortion. . . .

Retaining, communication with or authorizing Walker and Cummings, therefore, would not be enough to establish extortion on the part of the Does.  Accordingly, on the facts alleged, the Does could not have committed extortion and thus could not be held liable for civil conspiracy to commit extortion.  Under Ohio law, any vicarious liability Plaintiffs wish to impose must be vicarious *criminal* liability, as opposed to vicarious civil liability, and Plaintiffs cannot make this showing on the facts alleged.  By contrast, under federal criminal law, an individual *can* be charged with conspiracy to extort, and a criminal act entailing such a conspiracy could form the basis of a claim under Ohio Rev. Code § 2307.60.  *See* 18 U.S.C. § 875; 18 U.S.C. § 1951.  This is presumably why Plaintiffs decline to identify under what law the alleged extortion underlying their civil conspiracy claim occurred.  Because Ohio law would not impose liability, they instead turn to federal extortion law.  § 2307.60 only permits a civil recovery for *criminal* acts.

(Doc. 1 at PAGEID 5-6).  Defendants contend it is clear that plaintiffs' "civil conspiracy claim . . . hinge[s] upon federal extortion law" and "lives or dies based on whether Defendants violated 18 U.S.C. § 1951 or 18 U.S.C. § 875."  (Doc. 40 at PAGEID 1841).

As the Court understands defendants' argument, they allege that plaintiffs cannot establish an extortion claim against the Doe defendants under Ohio law based on the facts alleged in the amended complaint because the alleged actions constituting extortion are based on actions taken solely by Does' attorneys.  Defendants posit that if the Doe defendants cannot be held liable for extortion under Ohio law, then any civil conspiracy claim based on extortion against the Doe defendants under Ohio law likewise fails.  Defendants conclude, therefore, that plaintiffs' civil conspiracy claim based on extortion must therefore be premised on federal law (18 U.S.C. §§ 875, 1951), which permits a claim for conspiracy to commit extortion.

Defendants' argument is flawed, based on a false premise, and not based on a reasonable construction of plaintiffs' amended complaint.  There are no allegations in the amended

complaint to suggest that plaintiffs premise their civil conspiracy claim, based in part on extortion, on a federal claim of extortion.  Plaintiffs did not allege that defendants committed the crime of extortion under federal law; rather, defendants unilaterally raise this claim based on the assumption that plaintiffs have no viable extortion claim under Ohio law against the Doe defendants, a proposition that plaintiffs strongly dispute.  In any event, whether plaintiffs have actually stated a claim for extortion or civil conspiracy against the Doe defendants is immaterial for purposes of the *Grable* analysis.  *See Nenninger v. Rod,* No. 3:13-cv-1004, 2013 WL 6198309, at *2 (S.D. Ohio Nov. 27, 2013), *report and recommendation adopted sub nom. Nenninger v. Zanesfield Rod and Gun Club,* 2014 WL 28867 (S.D. Ohio Jan. 2, 2014).  Whether the complaint states a cause of action on which relief could be granted is a question of law which, like issues of fact, must be decided after - not before - the court has assumed jurisdiction over the controversy.  *Id.*, at *3.  Plaintiffs' amended complaint alleges five state law causes of action for extortion, coercion, defamation/libel, false light invasion of privacy, and civil conspiracy.  (Doc. 11).  The amended complaint makes no reference to federal law, and defendants have not shown that any claim necessarily depends on an issue of federal law for its resolution.  The complaint's reliance on state law is clear, and plaintiffs' state law claim for civil conspiracy cannot be "'recharacterized' as a federal claim for the purpose of removal."  *See Nenninger*, 2013 WL 6198309, at *2 (quoting *Roddy v. Grand Trunk Western R.R., Inc*., 395 F.3d 318, 322 (6th Cir. 2005) (quoting in turn *Loftis v. United Parcel Serv., Inc*., 342 F.3d 509, 514 (6th Cir. 2003)).

Finally, plaintiff has not shown that extortion is an essential element of the civil conspiracy claim.  Plaintiffs do not premise Count Five of the amended complaint, "Civil Conspiracy," on alleged acts of extortion alone.  Rather, plaintiffs plead a claim of civil

conspiracy based on additional alleged "tortious acts."  Thus, even if plaintiffs could not prevail

on a claim that the Doe defendants committed extortion under Ohio law as alleged in Count One,

plaintiffs could still pursue their civil conspiracy claim against the Doe defendants (and the other

defendants) based on other "tortious acts" alleged in Count Five of the amended complaint.

This case is therefore distinguishable from the cases defendants rely on to show that

"[t]he violation of federal law can only be described as a required element of the claim."  (Doc.

40 at PAGEID 1841, citing *Mikulski*, 501 F.3d at 569) (first *Grable* element satisfied where the

plaintiff's claim required interpretation of a federal statute - 26 U.S.C. § 312(n)(1) - and turned

on resolution of the issue of whether the defendant had improperly capitalized expenses on the

belief it was required to do so by the statute, or whether defendant was excluded from doing so

under a provision of the statute); *Nayyar,* 2012 WL 3929830, at *3 (state court claim raised a

disputed federal issue so as to satisfy first *Grable* prong where the claim could not be resolved

"without first interpreting Title VII, a federal statute, and deciding whether Title VII had been

violated"); *VA Timberline, LLC v. Appalachian Power Co.*, No. CIV.A. 4:06-CV-00026, 2006

WL 1993557, at *1-2 (W.D. Va. July 13, 2006) (first *Grable* factor was satisfied where "the

terms of the [federal] license - here an ingredient of the plaintiff's cause of action - are

interpreted under federal law" and the meaning of the federal license's terms was the primary

contested issue in the case)).

Plaintiffs' alleged references to the Avenatti matter have no bearing on whether a federal

statute is an essential element of plaintiffs' civil conspiracy claim.  In determining whether

plaintiffs' complaint has been properly removed to federal court under § 1331, the Court is

limited to examining the face of the "plaintiff's complaint, as it is stated at the time of removal,

and the defendant's notice of removal." *Gentek Bldg. Products, Inc.*, 491 F.3d at 330; *Ohio ex*

*rel. Skaggs v. Brunner*, 549 F.3d 468, 474 (6th Cir. 2008) (in "determin[ing] whether [a] claim arises under federal law," the Court looks only to the "well-pleaded allegations of the complaint. . . .") (quoting *Mikulski,* 501 F.3d at 560); *Caterpillar*, 482 U.S. at 392 (a case arises under federal law only when an issue of federal law appears on the face of the plaintiff's well-pleaded complaint). There is no basis for looking beyond the face of the complaint to representations or arguments plaintiffs made in the parties' state court litigation.[12]

Further, even if the Court were to consider plaintiffs' alleged references in the state court proceedings to the federal complaint against Michael Avenatti and alleged similarities between Avenatti and defendants' conduct, the Court would not conclude that plaintiffs' amended complaint sets forth a question of federal law. Plaintiffs have not incorporated federal statutes into their claims simply by comparing defendants' threats to similar conduct held to be unlawful under federal statutes (i.e., Avenatti-like threats prosecuted under18 U.S.C. § 875 or § 1951) and parallel state statutes (threats held to be unlawful in *Flatley*, a California case). (*See* Doc. 30 at PAGEID 1779-80, citing *Lee v. Kirkpatrick*, No. 1:16-CV-00123-GNS, 2016 WL 7197478, at *3 (W.D. Ky. Dec. 9, 2016) (citing authority for the proposition that "the paradigmatic example of a state claim with an embedded (though not necessarily significant) federal issue is a common-law claim for negligence per se based on the violation of a federal duty," and finding no federal jurisdiction where the plaintiffs brought "generic" negligence claims and "intend[ed] to invoke the federal regulations merely as further examples of Defendants' negligence"). Plaintiffs'

---

[12] Defendants rely on 28 U.S.C. § 1446(b)(3) to argue that the Court may look beyond the four corners of plaintiffs' complaint when applying the artful pleading doctrine, including by referring to "other paper." (Doc. 40 at PAGEID 15, citing 28 U.S.C. § 1446(b)(3): "Except as provided in subsection (c), if the case stated by the initial pleading is not removable, a notice of removal may be filed within 30 days after receipt by the defendant, through service or otherwise, of a copy of an amended pleading, motion, order or other paper from which it may first be ascertained that the case is one which is or has become removable."). Section 1446(b)(3) does not apply here and does not authorize the Court to look beyond the allegations of the amended complaint to determine if an exception to the well-pleaded complaint rule applies.

specific allegations in the amended complaint control here.  Their allegations that defendants'
threats and threatened actions "constitute extortion pursuant to R.C. 2905.11(A)(1), (4), and (5)"
(Doc. 11, ¶ 90) and that defendants conspired to commit "tortious acts of extortion" (*Id*., ¶ 134),
considered in conjunction with the remaining allegations of the amended complaint, fail to show
there is a stated federal issue in this case.

 The first *Grable* factor is not satisfied.

### b.  Any possible federal issue would not be disputed and substantial

 Assuming, *arguendo*, that plaintiffs' civil conspiracy to commit extortion claims against
the Doe defendants raised an essential federal issue, defendants have not shown that the federal
issue presented is disputed and substantial so as to satisfy the second *Grable* factor.  "To raise a
substantial question of federal law, the federal issue must not only be contested but also
substantial, 'indicating a serious federal interest in claiming the advantages thought to be
inherent in a federal forum.'"  *Miller*, 949 F.3d at 993 (quoting *Grable*, 545 U.S. at 313).  The
factors to be considered in making this determination include "whether a federal agency is a
party to the action, whether the federal issue is important and dispositive, and how broad the
binding effect of the decision will be."  *Id*. (citing *Mikulski*, 501 F.3d at 570).

 Defendants contend that although a federal agency is not involved here, this case does
present important questions related to federal extortion law similar to issues of federal regulation
of Class-III medical devices in *H.R. ex rel. Reuter*, 996 F. Supp. 2d at 680; the federal questions
are not merely incidental to the outcome because plaintiffs' civil conspiracy claim is grounded in
federal extortion law, and whether the claim is meritorious is immaterial; one or more of the
federal questions would be dispositive of plaintiff Ndukwe's conspiracy claim based on federal
extortion law and could lead to dismissal of defendant John Doe from the lawsuit; the federal

issue in this case could control numerous other cases; and there is no reason to think the state-federal jurisdictional balance would be upset by this Court retaining jurisdiction. (*Id*. at PAGEID 1839-46).

In arguing that the amended complaint, and specifically the civil conspiracy claim, presents a substantial question of federal law, defendants ignore relevant language in the amended complaint and fail to read it as a whole. Plaintiffs' civil conspiracy claim is largely or entirely grounded on state law claims of extortion, coercion, defamation/libel, and false light invasion of privacy against the six defendants named in the complaint. Even if plaintiffs could not succeed on their civil conspiracy claim against the two Doe defendants based on underlying acts of extortion, defendants have not shown that plaintiffs would be unable to pursue their civil conspiracy claim against other defendants based on the other underlying "tortious" acts alleged in Count Five. Thus, disposition of plaintiffs' civil conspiracy claim, to the extent it is premised on alleged acts of extortion by the Doe defendants, would not fully resolve the civil conspiracy claim against the Doe defendants or any other defendant.

The additional factors to be considered in determining whether plaintiffs' amended complaint presents a question of federal law that is disputed and substantial dictate against a finding to that effect. No federal agency is a party to the action or even tangentially involved in the litigation. Defendants cite a barebones, redacted email and resume that attorney Croswell sent to an FBI agent to attempt to show that Ndukwe's counsel sought "to have Defendants charged with federal extortion crimes." (Doc. 40 at PAGEID 1834, citing Exh. A). However, the evidence they cite goes beyond the allegations of the complaint and is not competent evidence to establish the proposition cited.

Further, even assuming plaintiffs' conspiracy to extort claims against the Doe defendants implicated federal criminal statutes, those criminal matters are not important to resolution of the civil conspiracy claim and to the lawsuit as a whole. For the reasons discussed *supra*, disposition of plaintiffs' civil conspiracy claim against the Doe defendants based on underlying acts of extortion would not fully resolve the civil conspiracy claim against the Doe defendants or any other defendant. Further, defendants' argument as to how resolution of the alleged federal question could impact defendant John Doe goes well beyond an inquiry into the significance of the federal issue defendants have identified and considers whether plaintiffs have stated a claim for relief against John Doe under *any* theory of recovery alleged in the amended complaint.[13] Defendants have not shown that a determination of whether the Doe defendants violated 18 U.S.C. § 875 or § 1951 is important to the resolution of this lawsuit.

Finally, assuming the civil conspiracy claim were construed as premised on a federal criminal statute, the resolution of the claim would not have a broad binding effect. Defendants allege that the federal issues in this case "could control numerous other cases" because (1) the Ohio Supreme Court's recent ruling in *Buddenberg v. Weisdack*, 161 N.E.3d 603 (Ohio 2020) may cause the issue of whether "the violation of federal criminal statutes may underpin such claims" to "arise far more frequently"[14]; and (2) a ruling on whether defendants "committed extortion would control other extortion cases." (Doc. 40 at PAGEID 1845-46). Defendants draw no logical connection between the Ohio Supreme Court's decision in *Buddenberg* and the

---

[13] Defendants argue that plaintiffs cannot pursue any claims against John Doe because Ohio law does not recognize the crimes of conspiracy to extort or coerce; the complaint does not state a claim for relief against John Doe for defamation/libel and false light invasion of privacy; and if the only remaining claim for civil conspiracy to commit extortion under federal law were to be dismissed, the entire case against John Doe would be disposed of. (Doc. 40 at 1844-45).

[14] The Ohio Supreme Court held that Ohio Rev. Code § 2307.60 does not require an underlying criminal conviction. *Id*.

potential precedential value a decision in this case may have.  To the contrary, if it were

necessary, inquiry as to whether the Doe defendants violated these statutes would be "fact-bound

and situation-specific."  *See Miller*, 949 F.3d at 993 (quoting *Empire Healthchoice Assur., Inc. v.

McVeigh*, 547 U.S. 677, 701 (2006)).

Defendants have not shown that plaintiffs' complaint presents a substantial federal

question that is disputed.  The second *Grable* factor is not satisfied.

### c. Hearing the claim would upset the established federal-state court balance

The third *Grable* factor also is not satisfied.  This Court's exercise of jurisdiction over the

state law claims alleged in the amended complaint would upset the balance of "federal and state

judicial responsibilities" because those claims involve matters of state statutory and common

law.  To the extent a federal criminal statute is implicated, its significance to the case is so

minimal and tangential that the exercise of federal jurisdiction would be overreach.

### C.  Conclusion

Defendants have failed to establish that plaintiffs' conspiracy claim is premised on

federal extortion law.  It follows that defendants cannot show that plaintiffs' complaint presents a

substantial federal question.  The complaint does not (1) "necessarily raise a stated federal

issue," (2) that is "actually disputed and substantial," and (3) that the "federal [court] may

entertain without disturbing any congressionally approved balance of federal and state judicial

responsibilities."  *Grable,* 545 U.S. at 314.  Plaintiffs' complaint, which alleges only state law

claims, must be remanded to state court.  *See* 28 U.S.C. § 1447(c).

### IV.  Plaintiffs' request for attorney fees and costs

Plaintiffs request an award of attorney fees and costs in connection with their motion to

remand.  (Doc. 30 at PAGEID 1786-89).  An order remanding a case under 28 U.S.C. § 1447(c)

"may require payment of just costs and any actual expenses, including attorney fees, incurred as a result of the removal."  28 U.S.C. § 1447(c).  "The language of the remand statute 'places an award of costs and attorney fees . . . squarely within the discretion of the district court, but subject to the guidance set forth by the Supreme Court in *Martin v. Franklin Capital Corp.,* 546 U.S. 132, 136-37 (2005)."  *Kent State U. Bd. of Trustees v. Lexington Ins. Co.*, 512 F. App'x 485, 488 (6th Cir. 2013) (quoting *Warthman v. Genoa Township Bd. of Trustees*, 549 F.3d 1055, 1059 (6th Cir. 2008)).  The Supreme Court in *Martin* held that "absent unusual circumstances," courts may award attorney's fees under § 1447(c) only where "the removing party lacked an *objectively* reasonable basis for seeking removal."  *Id*. (quoting *Martin*, 546 U.S. at 141) (emphasis added).  "Unusual circumstances" which would warrant an award of fees under 28 U.S.C. § 1447(c) include "[b]ad-faith motivation to remove for the purpose of prolonging litigation and imposing costs on the opposing party," even if the removing party had an objectively reasonable basis for removal.  *A Forever Recovery, Inc. v. Township of Pennfield*, 606 F. App'x 279, 284 (6th Cir. 2015) (citing *Martin,* 546 U.S. at 141).  It is not necessary to show that the defendant's position was "frivolous" or "without foundation" to demonstrate that a removing party lacked an objectively reasonable basis for removal.  *Kent State U. Bd.,* 512 F. App'x at 489 (quoting *Martin,* 546 U.S. at 138-39).

Plaintiffs' request for an award of attorney fees should be denied.  Although the undersigned has found defendants' arguments in favor of removal to be unpersuasive, the basis for removal was not objectively unreasonable so as to warrant an award of attorney fees and costs.  Further, plaintiffs have not shown unusual circumstance which would warrant an award of fees under § 1447(c).

**IT IS THEREFORE RECOMMENDED THAT:**

1.  Plaintiffs' motion to remand this matter to the Hamilton County Court of Common Pleas (Doc. 30) be **GRANTED**, plaintiffs' request for attorneys and costs be **DENIED**, and this matter be **REMANDED** to the Hamilton County Court of Common Pleas pursuant to 28 U.S.C § 1447(c).

2.  The parties remaining motions be **TERMINATED** on the Court's docket:

- Plaintiffs' motion for protective order (Doc. 3)

- Plaintiffs' motion to amend/correct complaint (Doc. 4)

- Plaintiff's motion to consolidate this case with a second case pending in the Hamilton County Court of Common Pleas (Doc. 5)

- The Walker defendants' renewed motion to dismiss the complaint (Doc. 6)

- Defendants' motion for a protective order (Doc. 9)

- Defendants' motion to defer a ruling on the motion to consolidate (Doc. 10)

- The Walker defendants' motion to dismiss the amended complaint for lack of jurisdiction (Doc. 18)

- Plaintiffs' original motion to remand this matter to state court (Doc. 23)

- Plaintiffs' motion to expedite consideration of the original motion to remand (Doc. 25)

- Plaintiffs' motion for an extension of time to respond to the Walker defendants' motion to dismiss (Doc. 26)

- Defendants' motion to strike the original motion to remand (Doc. 27)

Date:   3/16/2021

Karen L. Litkovitz
United States Magistrate Judge

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
### WESTERN DIVISION

CHINEDUM NDUKWE, et al,                          Case No. 1:20-cv-790
      Plaintiffs,                                McFarland, J.
                                            Litkovitz, M.J.

      vs.

JAMES L. WALKER, JR., et al.,
      Defendants.

## NOTICE

Pursuant to Fed. R. Civ. P. 72(b), **WITHIN 14 DAYS** after being served with a copy of the

recommended disposition, a party may serve and file specific written objections to the proposed

findings and recommendations. This period may be extended further by the Court on timely

motion for an extension. Such objections shall specify the portions of the Report objected to and

shall be accompanied by a memorandum of law in support of the objections. If the Report and

Recommendation is based in whole or in part upon matters occurring on the record at an oral

hearing, the objecting party shall promptly arrange for the transcription of the record, or such

portions of it as all parties may agree upon, or the Magistrate Judge deems sufficient, unless the

assigned District Judge otherwise directs. A party may respond to another party's objections

**WITHIN 14 DAYS** after being served with a copy thereof. Failure to make objections in

accordance with this procedure may forfeit rights on appeal. *See Thomas v. Arn*, 474 U.S. 140

(1985); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).